**Application of Robert DUVA.**
**Patent Appeal No. 7833.**

United States Court of Customs
and Patent Appeals.
Dec. 14, 1967.

Greene, Callmann & Durr, Frank L.
Durr, New York City, Stanley H. Leiber-
stein, Nutley, N. J., for appellant.

Joseph Schimmel, Washington, D. C.
(Raymond E. Martin, Washington, D. C.,
of counsel), for the Commissioner of Pat-
ents.

Before WORLEY, Chief Judge, RICH, SMITH and ALMOND, Associate Judges, and WILLIAM H. KIRKPATRICK.*

SMITH, Judge.

The sole issue to be determined in this appeal is whether the invention as a whole as claimed in the appealed claims of appellant's application [1] would have been obvious at the time it was made. The examiner based the rejection on 35 U.S.C. § 103 and this rejection was affirmed by the Patent Office Board of Appeals.[2]

While the appealed claims are couched in terms of "composition" and "process," it is appellant's basic position that all of the appealed claims relate to a single invention, i. e., the chemical, as distinguished from the electrolytic, deposition of gold plate on what the art terms the "basis" metal.

The decision of the board, adhered to on reconsideration, affirmed the examiner's rejection of the claims on appeal as relating only to obvious differences over the composition of the bath and the process of a single reference.[3]

### Appellant's Invention

Appellant's claimed bath composition and process for the deposition of gold upon a basis metal are asserted to be patentable improvements in what is known as the "electroless" deposition of gold. The invention, like the known electroless processes, does not require or utilize the techniques of electroplating baths and processes. Appellant's invention differs therefrom in that no electrical current is required; hence no anode or cathode is used, and appellant's bath is not used as an electrolyte. Appellant

achieves the deposition of gold solely by a chemical reduction process.

By way of background information, appellant's brief here describes three general processes for depositing gold from an aqueous bath; namely, (1) the electroplating method, generally described in the single reference patent before us, (2) the electroless process, with which the application here on appeal is primarily concerned, and (3) the immersion or replacement process. In his specification, appellant asserts that, in the immersion process, it is possible to obtain deposit thicknesses of no more than ⅛ to ¼ of a micron, but only on basis metals less noble than the metal being plated out from the bath.

As to the known prior chemical reduction, or electroless, processes, appellant's specification notes that the metal will be continually deposited by chemical reduction to substantial thicknesses, although deposition generally is limited to certain "catalytic" basis metals which effectively accept the deposit.

Appellant's invention is based on his asserted discovery that gold will deposit from a gold-containing solution in the presence of palladium ions. According to appellant's specification, an advantage of the invention resides in the deposit of gold at the rate of 2 to 2½ microns per hour at a temperature substantially below that ordinarily used for either immersion or electroless gold plating. Appellant's invention is also predicated on his observation that unless the excess of free cyanide (CN) ions is controlled in the bath composition below stated limits, no electroless deposition of gold will occur.[4] Ap-

---

* Senior District Judge, Eastern District of Pennsylvania, sitting by designation.

1. Serial No. 134,106, filed August 28, 1961, entitled "Chemical Gold Plating." Claims 1, 2, 4, 5 and 7 through 10 are the appealed claims. One claim has been allowed.

2. Consisting of Messrs. Asp and Magil, Examiners-in-Chief and Vertiz, Acting Examiner-in-Chief, who wrote the opinion of the board.

3. U. S. patent No. 2,719,821 to Charles R. Campana, issued October 4, 1955 entitled "Gold Alloy Plating Bath."

4. Appellant's brief points out that the limitation in the claims setting forth the CN ion concentration in addition to the composition of the bath is necessary for the reason that, although appellant's process would "work better" if no CN ions at all were present, and although appellant prefers to start with a solution which contains no free CN ions, this condition is

pellant theorizes that this is due to the formation of a very stable palladium complex with cyanide ions which does not provide the palladium (Pd++) ions upon whose action appellant depends to secure the plating out of the gold. Thus, appellant's specification states:

> * * * The ratio of the Pd salt to free CN— ions should therefore be maintained high enough to provide Pd++ ions which are necessary for the deposition of the gold. An exact measurement of the working ratio of Pd salt/CN— is not possible but it is very simple to test a given solution to see if gold deposits therefrom. It is understood that the palladium of the "P" salt and of disodium palladium tetrachloride provides Pd ++ ions in the gold cyanide bath.[5]

Appellant's brief summarizes, as the essence of appellant's invention, his discovery that:

> * * * multilayers of gold could be deposited by the electroless process provided (1) the bath contained a small but effective amount of palladous salt and (2) the bath contained insufficient (CN)— ions to poison the effect produced by the presence of said palladous salt. * * *

### The Appealed Claims

We agree with the board that appealed claims 1 and 10 are representative of the claims on appeal. They are:

1. As a composition for chemically depositing gold an aqueous solution consisting essentially of 0.5–30 g/1 of a soluble gold cyanide, 0.01 to 30 g/1 of a soluble palladous salt, absent sufficient CN ions to prevent deposition induced by said palladous salt, and sufficient alkali to provide a pH of 8–11.

10. A process for depositing gold on a workpiece having a conducting surface comprising immersing the workpiece in an aqueous solution consisting essentially of 0.5–30 g/1 of a soluble gold cyanide, sufficient alkali to provide a pH of 8–11, in the presence of 0.01 to 30 g/1 of a soluble palladous salt, and in the absence of sufficient CN ions to prevent deposition induced by said palladous salt whereupon gold is deposited on said conducting surface by the chemical reduction process.

Claims 1, 2, 4 and 5 on appeal, which are directed to the composition of the bath according to the invention, differ in certain particulars. Independent claim 2 further calls for an alkali salt of certain weak acids and a certain weak acid per se, which, appellant explains, improve the stability of the bath. Claims 4 and 5 are dependent upon claim 2, but are directed to specific palladous salts. Process claims 7 through 9 refer to and include independent claim 10 and define a particular source of the palladous ions.

### Reference Relied Upon

The sole reference upon which the rejection is predicated discloses a process and bath for *electrodepositing* a *codeposit* of gold and palladium in the form of a gold-palladium alloy. This reference discloses an electroplating process and bath which contains, in solution, salts of the various metals which are simultaneously deposited to provide the desired gold alloy plate. It preferably employs a palladium anode and a potential must be established between it and the cathode to be plated. The plating solution disclosed includes salts of gold, palladium and one or more of the metals nickel, copper and cadmium. The reference specifically states that gold and palladium are compatible, precious, acid-resistant metals which may be *coelectrodeposited* from an electrolyte under suitable conditions. The electrolyte or plating bath disclosed as preferable includes, in solu-

---

not maintained because immediately upon deposition of the first atoms of gold, CN ions are released from the potassium gold cyanide complex.

5. Appellant's specification explains that the bath is made up of potassium gold

cyanide to which is added 0.01–30 g/1 of a soluble palladous salt calculated as Pd. Suitable soluble palladium salts disclosed include palladium "P" salt, $(NH_3)_2Pd(NO_2)_2$, disodium palladium tetrachloride, $Na_2PdCl_4$, palladous chloride and sulfate.

tion, specific amounts of gold cyanide; palladium chloride; cyanides of nickel, cadmium, copper, and potassium; sodium chloride and potassium hydroxide.[6] In electrodepositing a coating of a gold-palladium alloy using this bath, the reference process uses an electrical current passing through the electrolyte at a potential of from four to six volts at a bath temperature of 140° F. The reference further discloses that the plating bath preferably has a pH of between 10 and 10.5 and the metals plated out of solution preferably are periodically replaced by their respective salts in the proportions to which the bath has been depleted.

### The Rejection

The examiner, after noting that the claimed proportions of gold cyanide and palladium salt in the claims on appeal "overlapped" those of the reference, assumed that the hard lustrous, acid-resistant and tarnish-proof nature of the prior art gold alloy plate embodied characteristics which are considered desirable in the art and concluded that there was no "patentable merit" in omitting one or more of the alloying compounds as well as their functions. The examiner considered claim 10 to be "unpatentable over" any of the conventional procedures now employed in electroplating, since the claim "lacks any significant method limitations" and is "drawn to an obvious and conventional method of coating by immersing the article to be coated in the coating composition."

The board affirmed, finding "no reversible error in the rejection of the claims," stating:

Appellant states that a basic feature of his invention is in the limitation on the amount of cyanide in the bath which must be restricted in order to permit electroless deposition. He avers that the bath of Campana is "loaded with cyanide" and is incapable of depositing gold chemically as shown by the affidavit of January 28, 1964, (Paper No. 5). We are not impressed with this argument for the reason that Campana optionally uses base metal cyanides to control the color of the gold plate and he states that one or more base metals may be omitted. The affidavit has no showing of test results using a bath having no base metal cyanide in accordance with patentee's teaching. Furthermore, the said affidavit indicates that some degree of gold deposition occurred in tests 1 and 3 following Campana's disclosure. We do not, therefore, accord patentable distinction to the limitations in the claims as to the cyanide content. In any event the negative limitation in claims 1 and 7 to 10 at the point of novelty would not be favorably considered by this Board for the purpose of defining a patentable distinction over the reference since a positive expression defining operable proportions can be employed. The intended use in the composition claims "for chemically depositing gold" has no patentable significance. The process claims do not set forth a positive step of depositing gold in accordance with the disclosure and do not distinguish over the reference in the "whereupon" step. Since the claims do not patentably distinguish over the reference, the rejection will be sustained. (35 U.S.C. 103).

6. The reference discloses a single specific example of a bath, having the following composition:

| | | | |
|---|---|---|---|
| Water | gallons | | 1 |
| Gold cyanide | ounces | | 0.5 |
| Palladium chloride | " | | 0.166 |
| Nickel cyanide | " | | 0.5 |
| Cadmium cyanide | " | | 0.053 |
| Copper cyanide | " | | 0.5 |
| Sodium chloride | " | | 0.5 |
| Potassium cyanide | " | | 2.0 |
| Potassium hydroxide | " | | 1.0 |

The reference further discloses that the concentrations of the example may be increased up to 3 times the quantities recited in the example.

The statutory mandate of 35 U.S.C. § 103 has been interpreted by the Supreme Court since the decision of the board. In Graham v. John Deere Co., 383 U.S. 1, 17, 86 S.Ct. 684, 694, 15 L.Ed.2d 545 (1966), the court states:

> * * * the § 103 condition, which is but one of three conditions, each of which must be satisfied, lends itself to several basic factual inquiries. Under § 103, the scope and content of the prior art are to be determined; differences between the prior art and the claims at issue are to be ascertained; and the level of ordinary skill in the pertinent art resolved. Against this background, the obviousness or non-obviousness of the subject matter is determined. * * *

■ Thus, we are required to focus attention in such a rejection first on the scope and content of the prior art, then on the factual differences between the invention disclosed in the prior art and the invention of the claims in issue, and then on the level of ordinary skill in the art before determining whether the invention as a whole is obvious.

A statement of the purpose of the claimed invention is set forth in each of the independent composition claims 1 and 2, i. e., the composition is "for chemically depositing gold." Similarly, the independent process claim 10 refers to gold deposited on a conducting surface "by the chemical reduction process." A similar statement of purpose taken from the prior art reference would be that it relates to the *electrodeposition* of an *alloy* of gold and palladium.

The solicitor argues that claim 1 is not restricted to a bath to be used only in the chemical or electroless process, urging that a chemical action or change "in a broad sense is what takes place" in an electroplating process. The solicitor further urges that the term "chemical deposition" lacks "patentable significance" for the additional reason that it is no more than an indication of the use contemplated. In this, the solicitor is but carrying forward the positions of the board and the examiner which seem to us to be directed more to the *form* than to the *substance* of the appealed claims.

■ The only rejection before us is a rejection for obviousness under 35 U.S.C. § 103 and despite the criticisms of the claim language found in the examiner's answer and the board's opinion, there appears to be no question but that the claims considered below meet the requirements of 35 U.S.C. § 112. Certainly, it cannot be said that they do not particularly point out and distinctly claim the subject matter which appellant regards as his invention. The breadth of the language employed in section 112 suggests that Congress intended that applicants be given a considerable range of choice in claim form and claim language so long as the form chosen and the language employed meet the requirement expressly stated therein that the claims particularly point out and distinctly claim the subject matter which the applicant regards as his invention. On the present record the appealed claims meet this broad statutory test and we regard the criticisms as to the form of the claims and the nature of the recitals therein which were voiced both by the examiner and the board as immaterial to the resolution of the present issue.

■ We cannot agree with the solicitor's contentions as to the asserted obviousness of the claimed invention. Appellant has satisfactorily pointed out, we think, the factual differences between the requirements of a bath for electroless processes and the requirements of the plating solution which forms an electrolyte used for electroplating processes. In the absence of a showing to the contrary, we do not agree that the compositions of a solution used as an electrolyte, whose ability to function is predicated upon the passage of a stated electrical current through the bath, would render it obvious that appellant's result could be achieved without the passage of such current.

It is also significant, we think, that the prior art reference proposes to electroplate an alloy of gold and palladium by

use of a palladium anode in the electrolyte and the establishment of a potential of a stated magnitude between the anode and the cathode. Appellant deposits *gold,* not an *alloy* of gold and palladium as the prior art teaches. To achieve the desired results, the prior art process deposits palladium along with gold, preferably by sacrificing a palladium anode. Appellant has no anode and proposes, not to sacrifice, but rather to recover or preserve the palladium present in the bath composition. There are no facts of record here from which we would be warranted in finding that such differences in purpose and *modus operandi* would have been obvious to one of ordinary skill in the art. Graham v. John Deere Co., supra.

■■ As to the solicitor's second contention regarding "intended field of use" limitations, this court in In re Van Lint, 354 F.2d 674, 680, 53 CCPA 844, 851 (1966), noted that the significance of the preamble of a claim is something to be determined on the basis of the *facts* of each case. See Kropa v. Robie, 187 F.2d 150, 151–152, 38 CCPA 858, 861–862 (1951) and In re Walles, 366 F.2d 786, 790, 54 CCPA 710, 716–717 (1966). Thus, all *factual* differences which may be properly noted in any portion of a claim must be included within the basis for comparison with the prior art if we are to properly evaluate the *differences* between the invention defined in a claim and the teachings of a reference. The command of 35 U.S.C. § 103 is to compare the invention *as a whole* with the prior art. Absent a failure of the applicant to comply with 35 U.S.C. § 112, we think every portion of the appealed claims must be considered in determining the invention as a whole in arriving at our decision as to obviousness required by a rejection under section 103.

On this basis we continue our evaluation of the differences between the invention defined by the claims on appeal and the prior art. Both appellant and the prior art use an aqueous solution containing a soluble gold cyanide. However, the purpose of the prior art use of this solution is to secure the electrodeposition of a gold-palladium alloy while appellant deposits only gold.

Both appellant and the reference use palladium in their respective processes, but for quite different purposes. Thus the prior art, as previously discussed, uses it to secure the *coelectrodeposition* of gold and palladium in the *form* of a gold palladium *alloy.* The prior art reference evinces no criticality about the concentration of the cyanide ions whereas appellant's invention depends upon using "a soluble palladous salt, absent sufficient CN ions to prevent deposition induced" by the palladous salt.

Appellant asserts there is a critical aspect to his invention concerning the concentration of cyanide ions in the bath composition. The solicitor, however, urges that the amount of potassium cyanide used in the prior art reference satisfies the "broad language" of the claims before the court. We do not agree with this position. When fairly considered for what it teaches one of ordinary skill in the art, the prior art patent does not make obvious the cyanide limitations present in the appealed claims.

Thus, appellant points out that the bath of the prior art reference contains fourteen times as much cyanide as is necessary to complex gold cyanide to make it soluble. He urges that it is not obvious to omit this essential salt or reduce its concentration in view of the fact that the reference discloses that two ounces of potassium cyanide per gallon is the *minimum* allowable. Thus is would appear to be more likely to *increase* the concentrations of potassium cyanide in the bath composition of the prior art. In this respect, the prior art reference teaches away from the invention defined by appellant. We thus conclude that the limitation under discussion embraces a meaningful factual difference between the claims at issue and the reference.

The board, as previously set forth, considered the language "absent sufficient CN ions to prevent deposition induced by said palladous salt," set forth in claim 1, and similar language in claims 7–10, to

be directed to "negative limitations" at the "point of novelty" which "would not be favorably considered by the board for the purpose of defining a patentable distinction over the reference since a positive expression defining operable proportions can be employed." Appellant stated in his specification that it is not possible to make an exact measurement of the working ratio of the palladous salt to the cyanide ion. The solicitor argues that since the board held that "a positive expression defining operable proportions can be employed," it had effectively challenged the correctness of the appellant's specification. Conceding this to be true, we fail to see its relevance to the issue before us.

Contrary to the assertions of the solicitor, we think that In re Bankowski, 318 F.2d 778, 783, 50 CCPA 1548, 1554 (1963), aids appellant's position. Here, like *Bankowski*, the claims do not appear to us to be objectionable since they affirmatively specify the constitution of the bath and the positive steps required for the claimed process.

A further distinction is that the rejection here is for obviousness under 35 U.S.C. § 103, while in *Bankowski*, the rejection was based on section 112. The issue thus presented here is not one of indefiniteness of the claims, but rather is whether the form here chosen by appellant for reciting the claimed limitations recite an unobvious difference over the prior art. We think they do.

Finally, appellant argues that in his claimed invention, palladium is used to *induce* deposition of gold, whereas the reference uses palladium to alloy with and codeposit with gold. At oral argument, counsel for appellant stated that the palladium used in appellant's invention is completely recoverable and constitutes the "driving force" for the deposition.

The prior art does not teach such a concept for, in the disclosed process, the palladium is *consumed*, not *recovered*. Since it forms a deposited alloy with gold, palladium must continually be added to the bath, preferably by sacrificing the palladium anode used. Moreover, in the prior art the applied electric current through the electrolyte bath is the "driving force" for the deposition of the gold-palladium alloy. There is no concept in the prior art that palladium may be used as a chemical agent to assure that gold alone will be plated out of a bath containing both palladium and gold.

On the basis of the foregoing differences between the appealed claims and the disclosures in the prior art reference, we think that the claimed subject matter *as a whole* would not have been obvious to a person having ordinary skill in the art.

For the foregoing reasons, the decision of the board is *reversed*.

*Reversed.*

WORLEY, C. J., did not participate.